1

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT

8                         CENTRAL DISTRICT OF CALIFORNIA

9

10

11  JANET VILLA,                     )  Case No. EDCV 04-0816-RC
                                     )
12                  Plaintiff,       )
                                     )
13  vs.                              )  OPINION AND ORDER
                                     )
14  JO ANNE B. BARNHART,             )
    Commissioner of the Social       )
15  Security Administration,         )
                                     )
16                  Defendant.       )
    _____)

17

18       Plaintiff Janet Villa filed a complaint on July 14, 2004, seeking

19  review of the Commissioner's decision denying her applications for

20  disability benefits.  The Commissioner answered the complaint on

21  January 10, 2005, and the parties filed a joint stipulation on

22  April 20, 2005.

23

24                              **BACKGROUND**

25                                   **I**

26       On January 4, 2002, plaintiff applied for disability benefits

27  under Title II of the Social Security Act ("the Act"), 42 U.S.C. §

28  423, and under the Supplemental Security Income ("SSI") program of

1  Title XVI of the Act, claiming an inability to work since December 9,

2  2001, due to bipolar disorder and borderline schizophrenia.[1]

3  Certified Administrative Record ("A.R.") 60-62, 113, 330-31.  The

4  plaintiff's applications were initially denied on February 26, 2002,

5  and were denied again on November 1, 2002, following reconsideration.

6  A.R. 27-38.  The plaintiff then requested an administrative hearing,

7  which was held before Administrative Law Judge Helen E. Hesse ("the

8  ALJ") on July 28, 2003.  A.R. 39, 334-63.  On August 21, 2003, the ALJ

9  issued a decision finding plaintiff is not disabled.  A.R. 10-19.  The

10 plaintiff appealed this decision to the Appeals Council, which denied

11 review on April 30, 2004.  A.R. 5-9.

12

13                                  **II**

14     The plaintiff, who was born on June 7, 1974, is currently 31

15 years old.  A.R. 56, 60, 65, 325, 330.  She has a high school

16 equivalency degree, and has previously worked at a variety of jobs,

17 including as a dishwasher, waitress, cashier, food service worker, gas

18 station attendant, pizza maker, delivery person, and a sales clerk.

19 A.R. 77, 83, 86-93, 114, 119, 140, 145, 148-55, 338-39.

20

21     The plaintiff has had mental problems since adolescence, see,

22 e.g., A.R. 219, 251, and since August 8, 2000, has received mental

23 health treatment at the San Bernardino County Department of Behavioral

24 _____

25     [1]  The plaintiff previously applied for Title II benefits on
   August 17, 2000; however, her application was denied on
26 December 14, 2000.  A.R. 13, 23-26, 55-58, 325-26.  The plaintiff
   also applied for Title II benefits on July 24, 2002; however, she
27 requested her application be dismissed on July 28, 2003.  A.R.
   65-67, 336-37.
28

1  Health ("DBH").  A.R. 199-222, 243-49, 271-312.  On August 10, 2000,

2  Swati Thacker, M.D., examined plaintiff, diagnosed her with a

3  psychotic disorder (not otherwise specified) and bulimia nervosa,[2]

4  determined plaintiff's Global Assessment of Functioning ("GAF") to be

5  30,[3] and prescribed Prozac[4] and Zyprexa for plaintiff.[5]  A.R. 199, 217-

6  18A, 300-01, 308.  Dr. Thacker continued to treat plaintiff until

7  November 2002, when Dr. Thacker learned plaintiff had altered a

8  prescription to include methadone.  A.R. 273-74.

9

10      As of May 22, 2001, plaintiff was working approximately 25 hours

11  a week as a bookkeeper for her family's business; however, the family

12  lost the business by December 2001.  (The plaintiff later admitted she

13  was stealing money from the business and using it to buy alcohol.

14

15      [2]  Bulimia nervosa is "an eating disorder occurring
16  predominantly in females, with onset usually in adolescence or
    early adulthood and characterized by episodic binge eating
17  followed by behaviors designed to prevent weight gain, including
    purging, fasting, and excessive exercise."  Dorland's Illustrated
18  Medical Dictionary, 251 (29th ed. 2000).

19      [3]  A GAF of 25-30 means "[b]ehavior is considerably
20  influenced by delusions or hallucinations or serious impairment
    in communication or judgment (e.g., sometimes incoherent, acts
21  grossly inappropriately, suicidal preoccupation) or inability to
    function in almost all areas (e.g., stays in bed all day; no job,
22  home, or friends)."  American Psychiatric Ass'n, Diagnostic and
    Statistical Manual of Mental Disorders, 34 (4th ed. (Text
23  Revision) 2000).

24      [4]  "Prozac is prescribed for the treatment of [major]
25  depression — that is, a continuing depression that interferes
    with daily functioning."  The PDR Family Guide to Prescription
26  Drugs, 554 (8th ed. 2000).

27      [5]  "Zyprexa helps manage symptoms of schizophrenia and other
28  psychotic disorders."  Id. at 773.

1  A.R. 202-03, 207, 247.)  The plaintiff began taking classes at a local

2  community college in January 2002, and after Dr. Thacker prescribed

3  Depakote[6] for plaintiff, A.R. 201-02, 247, she did well at school.

4  A.R. 242, 244-46.  On June 13, 2002, Dr. Thacker reported plaintiff

5  showed no signs of psychotic difficulties and was working part-time

6  for her aunt and planning to take summer school classes.  A.R. 243.

7  However, by October 9, 2002, plaintiff had dropped out of the

8  community college and was again drinking alcohol.  A.R. 277.

9

10  On December 19, 2002, Alan Compton, M.D., examined plaintiff at

11  DBH and diagnosed her with bulimia nervosa by history, active episodic

12  alcohol dependence, polysubstance abuse by history and a personality

13  disorder (not otherwise specified) with borderline and antisocial

14  features, and determined plaintiff's GAF to be 60.[7]  A.R. 274-75, 307.

15  On February 10, 2003, C. Krishna-Murthy, M.D., prescribed Seroquel[8] to

16  plaintiff, A.R. 272-73, and on July 14, 2003, Romeo Villar, M.D., a

17  psychiatrist, also prescribed Seroquel for plaintiff.  A.R. 318-20.

18

19       [6]  Among other uses, "Depakote . . . [is] used to control

20  the manic episodes — periods of abnormally high spirits and
   energy — that occur in bipolar disorder (manic depression)."  The

21  PDR Family Guide to Prescription Drugs at 194.

22       [7]  A GAF of 60 indicates "[m]oderate symptoms (e.g., flat
   affect and circumstantial speech, occasional panic attacks) or

23  moderate difficulty in social, occupational, or school

24  functioning (e.g., few friends, conflicts with peers or co-
   workers)."  Diagnostic and Statistical Manual of Mental Disorders

25  at 34.

26       [8]  "Seroquel combats the symptoms of schizophrenia, a mental

27  disorder marked by delusions, hallucinations, disrupted thinking,
   and loss of contact with reality."  The PDR Family Guide to

28  Prescription Drugs at 610.

4

1    On October 18, 2002, Ernest Bagner, III, M.D., a consulting

2  psychiatrist, examined plaintiff and diagnosed her with a mood

3  disorder (not otherwise specified) and determined plaintiff's GAF to

4  be 69.[9]  A.R. 250-53.  Dr. Bagner opined plaintiff has "zero-to-mild"

5  limitations maintaining concentration and attention and completing

6  simple tasks; "mild" limitations interacting with supervisors, peers,

7  and the public, completing complex tasks, and completing a normal work

8  week without interruptions; and "mild-to-moderate" limitations

9  handling normal stresses at work.  A.R. 253.

10

11    On October 31, 2002, Henry Amado, M.D., a nontreating,

12  nonexamining psychiatrist, diagnosed plaintiff as having borderline

13  personality traits, and opined plaintiff is "moderately" limited in

14  her ability to maintain attention and concentration for extended

15  periods and work in coordination with or proximity to others without

16  being distracted by them, complete a normal workday and workweek

17  without interruptions from psychologically-based symptoms and to

18  perform at a consistent pace without an unreasonable number and length

19  of rest periods, get along with coworkers or peers without distracting

20  them or exhibiting behavioral extremes, and respond appropriately to

21  changes in the work setting, but is not otherwise limited; plaintiff

22  has "no" restriction of daily living activities; "mild" difficulties

23  maintaining social functioning; "moderate" difficulties of

24  _____

25    [9]  A GAF of 69 indicates "[s]ome mild symptoms (e.g.,
   depressed mood and mild insomnia) or some difficulty in social,
26  occupational, or school functioning (e.g., occasional truancy, or
   theft within the household), but generally functioning pretty
27  well, has some meaningful interpersonal relationships."
   Diagnostic and Statistical Manual of Mental Disorders at 34.
28

1  concentration, persistence or pace; and has experienced "no" episodes

2  of decompensation of an extended duration; plaintiff can concentrate

3  and relate to others to a sufficient extent to carry out unskilled

4  work not involving the general public and she can sustain simple,

5  repetitive tasks with adequate pace and persistence and can adapt and

6  relate to coworkers and supervisors, but cannot work with the public.

7  A.R. 254-70.

8

9      Clinical psychologist Joseph Malancharuvil, Ph.D., testified at

10  the administrative hearing that plaintiff has been diagnosed with a

11  mixed personality disorder and paranoid schizophrenia, which is

12  "questionable" since it is based on observations rather than objective

13  findings.  A.R. 342-58.  Dr. Malancharuvil opined plaintiff has "mild"

14  restrictions in her activities of daily living and has once or twice

15  experienced episodes of decompensation.  A.R. 354-55.  Dr.

16  Malancharuvil further opined that plaintiff has "moderate" limitations

17  in social functioning and concentration, persistence and pace when

18  drinking, but otherwise has "mild" limitations in these areas.

19  Specifically, Dr. Malancharuvil noted that, if you fully accept

20  plaintiff's testimony, plaintiff has "marked" limitations in social

21  functioning; however, plaintiff's testimony is "questionable" since

22  psychotic individuals tend not to recognize they are having delusions,

23  and a person with acute symptoms of paranoid schizophrenia who is

24  socially phobic, as plaintiff claims, would not be able to function in

25  the manner plaintiff did.  Id.  Finally, Dr. Malancharuvil opined

26  plaintiff should be restricted to moderately complex tasks in a

27  habituated setting with only normal interactions with co-workers and

28  supervisors, but avoiding intense interpersonal interactions.  A.R.

6

1 | 356-57.

2

3 | **DISCUSSION**

4 | **III**

5 | The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

6 | review the Commissioner's decision denying plaintiff disability

7 | benefits to determine if her findings are supported by substantial

8 | evidence and whether the Commissioner used the proper legal standards

9 | in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th

10 | Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

11

12 | "In determining whether the Commissioner's findings are supported

13 | by substantial evidence, [this Court] must review the administrative

14 | record as a whole, weighing both the evidence that supports and the

15 | evidence that detracts from the Commissioner's conclusion." Reddick,

16 | 157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir.

17 | 2001).  "If the evidence can reasonably support either affirming or

18 | reversing the [Commissioner's] conclusion, the court may not

19 | substitute its judgment for that of the [Commissioner]." Reddick, 157

20 | F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir.

21 | 2002).

22

23 | The claimant is "disabled" for the purpose of receiving benefits

24 | under the Act if she is unable to engage in any substantial gainful

25 | activity due to an impairment which has lasted, or is expected to

26 | last, for a continuous period of at least twelve months.  42 U.S.C. §§

27 | 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

28 | "The claimant bears the burden of establishing a prima facie case of

7

1 disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995),

2 cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273,

3 1289 (9th Cir. 1996).

4

5     Regulations promulgated by the Commissioner establish a five-step

6 sequential evaluation process to be followed by the ALJ in a

7 disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**,

8 the ALJ must determine whether the claimant is currently engaged in

9 substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).

10 If not, in the **Second Step**, the ALJ must determine whether the

11 claimant has a severe impairment or combination of impairments

12 significantly limiting her from performing basic work activities. 20

13 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ

14 must determine whether the claimant has an impairment or combination

15 of impairments that meets or equals the requirements of the Listing of

16 Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20

17 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the

18 ALJ must determine whether the claimant has sufficient residual

19 functional capacity despite the impairment or various limitations to

20 perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not,

21 in **Step Five**, the burden shifts to the Commissioner to show the

22 claimant can perform other work that exists in significant numbers in

23 the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

24

25     Where there is evidence of a mental impairment that may prevent a

26 claimant from working, the Commissioner has supplemented the five-step

27 sequential evaluation process with additional regulations addressing

28 mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d

1 | 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine

2 | the presence or absence of certain medical findings relevant to the

3 | ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

4 | Second, when the claimant establishes these medical findings, the ALJ

5 | must rate the degree of functional loss resulting from the impairment

6 | by considering four areas of function: (a) activities of daily living;

7 | (b) social functioning; (c) concentration, persistence, or pace; and

8 | (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4),

9 | 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ

10 | must determine whether the claimant has a severe mental impairment.

11 | 20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a mental

12 | impairment is found to be severe, the ALJ must determine if it meets

13 | or equals a Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

14 | Finally, if a Listing is not met, the ALJ must then perform a residual

15 | functional capacity assessment, and the ALJ's decision "must

16 | incorporate the pertinent findings and conclusions" regarding

17 | plaintiff's mental impairment, including "a specific finding as to the

18 | degree of limitation in each of the functional areas described in [§§

19 | 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3),

20 | (e)(2), 416.920a(d)(3), (e)(2).

21 |

22 |      Applying the five-step sequential evaluation process, the ALJ

23 | found plaintiff has not engaged in substantial gainful activity since

24 | the alleged onset of disability.  (Step One).  The ALJ then found

25 | plaintiff has an impairment or combination of impairments considered

26 | severe (Step Two); however, she does not have an impairment or

27 | combination of impairments that meets or equals a Listing.  (Step

28 | Three).  The ALJ next determined plaintiff is able to perform her past

1  relevant work as a dishwasher, pantry worker, and pizza maker helper;

2  therefore, she is not disabled.  (Step Four).  Alternatively, the ALJ

3  found plaintiff is not disabled because she can perform a significant

4  number of jobs in the national economy, such as hand packager, laundry

5  worker, and cook's helper.  (Step Five).

6

7                              **IV**

8     A claimant's residual functional capacity ("RFC") is what she can

9  still do despite her physical, mental, nonexertional, and other

10 limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

11 Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

12 the ALJ found plaintiff retains the RFC to perform moderately complex

13 tasks in a habituated work setting so long as the work requires no

14 intense interpersonal relationships or makes plaintiff responsible for

15 safety operations.  A.R. 18.  However, plaintiff contends the ALJ's

16 finding is not supported by substantial evidence because the ALJ

17 failed to properly consider the opinions of her treating therapists at

18 DBH, and specifically, Dr. Thacker's finding that plaintiff had a GAF

19 of 30 when initially evaluated on August 10, 2000.

20

21    Although the ALJ must provide clear and convincing reasons for

22 rejecting the uncontroverted opinions of a treating physician, Bayliss

23 v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart,

24 340 F.3d 871, 874 (9th Cir. 2003), the ALJ is not required to discuss

25 a claimant's GAF score in determining whether she is disabled, and the

26 failure to do so, without more, does not invalidate the ALJ's

27 decision.  Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir.

28 2002).  Here, the ALJ did not completely ignore Dr. Thacker's

                              10

1 treatment notes.  Rather, she cited those notes in finding plaintiff

2 "has been seen from about August 2000 to the present for monthly

3 medication visits[,]" A.R. 15,[10] and plaintiff points only to the

4 ALJ's alleged error in not discussing her GAF score -- which is not

5 critical.[11]

6

7     Moreover, Dr. Thacker's treatment notes tend to support the ALJ's

8 finding that plaintiff is not disabled since they show that

9 plaintiff's mental health generally improved with medication, so that

10 she was able to work part-time for her family and her aunt and was

11 able to attend the community college.  A.R. 202-03, 207, 214-16, 242-

12 46.  Furthermore, as recently as December 19, 2002, Dr. Compton found

13 that, even without medication, plaintiff was doing "relatively

14 well[,]" her affect was "bright and generally amused[,]" she reported

15 her mood was doing remarkably well, and her GAF was 60.  A.R. 274-75.

16

17     Finally, Dr. Malancharuvil relied on Dr. Thacker's treatment

18 notes in reaching his opinions regarding plaintiff's RFC, which the

19 ALJ adopted.  See, e.g., A.R. 357 (noting plaintiff steadily improved

20 with proper treatment).  Therefore, there is simply no evidence in the

21

22

23     [10]  Although the ALJ could have summarized Dr. Thacker's
notes in greater detail, that error, if any, was harmless since
Dr. Thacker's treatment notes tend to support the ALJ's finding
24  that plaintiff is not disabled.  See, e.g., Burch v. Barnhart,
400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not
25  be reversed for errors that are harmless.").

26

27     [11]  Indeed, although Dr. Thacker evaluated plaintiff with a
GAF of 30 on August 10, 2000, plaintiff does not contend she
became disabled and unable to work until December 9, 2001.  A.R.
28  60, 199, 308.

1 record showing the ALJ either implicitly or explicitly rejected Dr.

2 Thacker's opinions.  Cf. Bayliss, 427 F.3d at 1216.

3

4    The plaintiff also contends the ALJ erred in failing to consider

5 the opinions of Cyndee J. Elwood, who conducted the initial screening

6 of plaintiff at DBH on August 8, 2000, and who concluded plaintiff was

7 severely dysfunctional because she was unable to hold a job on her

8 own.  A.R. 219-22, 302-05.  Although Ms. Elwood is not an acceptable

9 medical source, she is an "other source," 20 C.F.R. §§ 404.1513(a),

10 (d)(1), 416.913(a), (d)(1), whose opinion should have been considered.

11 See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony

12 as to a claimant's symptoms is competent evidence that an ALJ must

13 take into account, unless he or she expressly determines to disregard

14 such testimony and gives reasons germane to each witness for doing

15 so.").  Nevertheless, any error in failing to consider Ms. Elwood's

16 opinion was harmless given that, as discussed above, the medical

17 evidence from Drs. Thacker and Compton, who are acceptable medical

18 sources at DBH, and who evaluated plaintiff subsequent to Ms. Elwood,

19 supports the ALJ's assessment of plaintiff's RFC.  Burch, 400 F.3d at

20 679; see also Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)

21 (per curiam) (ALJ's failure to discuss lay testimony conflicting with

22 available medical evidence is harmless error).

23

24    As discussed herein, the Court finds that the ALJ's assessment of

25 plaintiff's RFC is supported by substantial evidence, including Dr.

26 Thacker's treatment notes, the evaluations performed by Drs. Bagner

27 and Compton, and medical expert Dr. Malancharuvil's testimony.

28 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also

1   <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir.

2   1999)("Opinions of a nonexamining, testifying medical advisor may

3   serve as substantial evidence when they are supported by other

4   evidence in the record and are consistent with it.").  Thus, there is

5   no merit to plaintiff's claim.

6

7       Finally, at the administrative hearing, vocational expert David

8   Rinehart testified that plaintiff can perform her past relevant work

9   as a dishwasher, pantry assistant, and pizza maker helper and other

10  jobs in the national economy, including hand packager, laundry worker,

11  and cook's helper.  A.R. 359-61.  This testimony constitutes

12  substantial evidence to support the ALJ's Step Four determination that

13  plaintiff can perform her past relevant work, <u>Roberts</u>, 66 F.3d at 184;

14  <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1415 (9th Cir. 1993); thus,

15  plaintiff has not her burden at Step Four.  <u>Sanchez v. Sec. of Health</u>

16  <u>& Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987).  Similarly, the

17  vocational expert's testimony provides substantial evidence to support

18  the ALJ's alternative Step Five determination that plaintiff can

19  perform a significant number of jobs in the national economy.

20  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163 (9th Cir. 2001); <u>Meanel</u>, 172

21  F.3d at 1115.

22

23                              **ORDER**

24       IT IS ORDERED that: (1) plaintiff's request for relief is denied;

25  and (2) the Commissioner's decision is affirmed, and Judgment shall be

26  entered in favor of defendant.

27  DATE:   November 30, 2005          /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
28                                     UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-0816.MDO - 11/30/05

13